## LEWIS et al. v. SOUTHERN ADVANCE BAG & PAPER CO. et al.
### No. 5047.

Court of Appeal of Louisiana. Second Circuit.

June 4, 1935.

See, also, 147 So. 532.

Elder & Elder, of Ruston, for appellants.

H. W. Ayres, of Jonesboro, for appellees.

DREW, Judge.

In this case the lower court has rendered a written opinion which correctly states the facts and cites the law applicable thereto. If we should write an opinion, we could only reiterate what has been said by the learned judge below. We therefore adopt the opinion of the lower court as our own. It is as follows:

"The plaintiffs in the above styled and numbered suit, James Preston Lewis and Mrs. Carie Lewis, parents of Levi Lewis, deceased, obtained a judgment therein against the defendant, Southern Advance Bag & Paper Company, for the sum of $3.00 per week for a period of 300 weeks, beginning with July 6, 1932, based upon the finding of the Court of Appeal that plaintiffs, at the time of the death of their deceased son, were partially dependent upon him for support.

"The Workmen's Compensation Law of Louisiana (Act No. 20 of 1914 as amended), and particularly section 8 thereof, as lastly amended by Act No. 242 of 1928, provides in subsection 2, subdivision (F), of said section 8, that compensation payments to the parents of the deceased workman shall terminate when the condition of dependency ceases.

"Southern Advance Bag & Paper Company in this proceeding seeks a review of the compensation award made to plaintiffs by the Court of Appeal judgment, above referred to, and, in its petition for said review, in paragraph IV thereof, it alleges as follows: "'Petitioner shows that the said James Preston Lewis and Mrs. Carie Lewis are no longer dependent upon the wages of Levi Lewis or upon the compensation payments of $3.00 per week for the reason that the said James Preston Lewis now has a profitable employment sufficient to support himself and his wife, the said Mrs. Carie Lewis.'

"The said plaintiffs in their answer to said defendants' petition deny the above allegations, as follows: 'Paragraph IV is specially denied; and defendants further specially deny that the condition of actual dependency on which the judgment was based as rendered in said cause has ceased to exist, but show that said condition of actual dependency has continually and at all times, including the present, existed.'

"The Court of Appeal (147 So. 532, 535) based its award of compensation on the following finding of facts, as disclosed by its opinion in the case:

"'We are convinced that they were only partially actually dependent upon the deceased for support. The deceased in his new job, from the date of its beginning, June 7th, until his death, July 6th, had only earned $31.05, and, if we deduct the last week, which was for only three days, we find he earned $27.45 over a period of five weeks, or approximately $5.49 a week, which is hardly a sufficient amount to clothe and feed three people. We also find that plaintiffs were being furnished a house to live in, by a brother of one of plaintiffs; that they had sold some chickens, had a garden which at least partially supplied the table, and that plaintiffs

had sold some of the vegetables; the minor daughter, who was living with plaintiffs, was working and earning more than the deceased; that she bought her own clothes and was paying a back debt for board, which was contracted while attending school at Louisiana Tech. The earnings of the minor daughter belonged to her parents (Civil Code, art. 229), and the obligation to clothe her and to pay her board while at school likewise was an obligation of her parents. When she clothed herself and paid her board, she was contributing to the support of her parents.

" 'The father of deceased was a middle-aged man, in his 40's, and in good health, and had worked for the Conservation Commission at a salary of $75 per month up until the middle of January, 1932. Since that time he had been in the hide business, working with borrowed capital, and had lost on the venture. At the time of his son's death, he was out of employment.

" 'Under the facts above related, we cannot find that plaintiffs were wholly actually dependent upon deceased for support. They were partially actually dependent upon him.

" 'The record discloses that deceased prior to his death contributed to the support of his parents; that he bought some groceries, and his mother and father received from the commissary of defendant company some trade books, used to buy necessities of life. It is shown that between the dates of February 20, 1932, and July 2, 1932, there were $23 worth of trade books drawn against Levi Lewis' account with the defendant company. Two grocers testified that he bought small amounts of groceries from them during that period. The record fails to show just what part of his wages was used to assist in the support of his parents, and the amounts actually shown will not justify a judgment for a greater amount than the minimum allowed under the Compensation Act, which is $3 per week, and for which amount plaintiffs are entitled to judgment.'

"The testimony in this proceeding shows that, since said judgment was rendered, plaintiff James Preston Lewis has been elected marshal of the town of Jonesboro, and that he assumed the duties of that office on or about July 1, 1934. The town of Jonesboro pays him a salary of $100 per month and $25 per month, in addition to his salary, to cover, or to apply on, the expenses of the operation of his automobile while in the discharge of his official duties. Plaintiffs moved to town in January, 1933. Prior to that time, and at the time the judgment was ren-

dered, they lived on a small farm just out of town, owned partially, at least, by a brother of Mr. Lewis. They did not have to pay any rent at that location. There they raised vegetables and chickens and derived some income from the sale of the surpluses of these articles. When they moved to town, they either had to pay rent or buy a home. They traded their interest in the farm property for some town property, consisting of two pieces. They reside on one piece of this property and rent the other at a rental of $8 per month. The home property is mortgaged to the extent of $325 and the other property to the extent of $600. They have sold some real estate to D. E. Henry, their son-in-law, on which he owes the purchase price, $700, which amount is secured by mortgage. This mortgage is dated February 3, 1933, and the indebtedness secured by it is due or was due on February 3, 1935, with 8 per cent. per annum interest from February 3, 1933, until paid.

"It appears then that plaintiffs have what might be termed as fixed income the following: $100 per month as salary earned by Mr. Lewis; $8 per month as rent from the house rented; $25 per month from the town to cover expense on the operation of the automobile; and the 8 per cent. per annum interest on the $700 debt to D. E. Henry, amounting to $56 per year.

"As against this income, they have the following expenses to be paid out of the same: $36 per month on the purchase price of an automobile; $25 per month as expenses for the operation of the automobile; water, lights, and gas, amounting to $14.00 per month; taxes and insurance on their real estate, interest on their mortgage indebtedness, and the running expenses of the family, consisting of plaintiffs and their three children, which expenses include food, clothing, etc., for all of them, and schooling for the children, one of whom is attending college at Louisiana Tech., but boarding at home with her parents.

"Plaintiffs keep boarders, having six at the time this case was tried, and receive from them $4.50 each per week. They contend that they do not make any profit from these boarders, but it is unreasonable to believe that they would continue to keep these boarders without making some profit. It is clear from their testimony that they intend to say that, counting in all the family expenses for food, water, lights, and gas, and hired household help, they do not make a profit. I am certain that the profit earned from the board-

ers helps pay the family expenses, in addition to that of the boarders.

"There is a question as to whether the monthly payments of $36 on the purchase price of the automobile that Mr. Lewis uses in the discharge of his duties as town marshal is a necessary expense and one that should be included and considered in determining the matter of plaintiff's dependency at this time. Plaintiff Lewis seems to want to take the position that the town officials required him to buy this car. The testimony shows that these officials only suggested that he get a car. That the duties of his office make it necessary that he have a car there can be no question. In these times of fast travel and the uses that criminals make of the automobile in their work, and especially in making a get-away, it is very necessary that officers of the law also have at their command a means of rapid conveyance. So I consider these payments necessary and that they should be included in plaintiffs' necessary expenses.

"It is very apparent that the income of plaintiff, James Preston Lewis, is not sufficient to take care of his family expenses and his other necessary obligations. It is more expensive to maintain a family in town and in keeping with the position he holds than it was when he resided on the farm and held no official position. The public expects one in his position to maintain a higher standard of living, to keep his bills more or less promptly paid, and to do his part in carrying the civic obligations and affairs of the community in which he and his family reside. All of this requires a substantial income.

"Plaintiffs' son was a minor at the time he met his death, that is, on the 6th day of July, 1932, being then approximately 20 years of age. His parents were entitled to his earnings, and, no doubt, if he were living today, he would be contributing to the support of his parents in much the same manner as he was when he met his death. And, considering the changed conditions under which his parents are now living, it is evident that they would need that support.

"The Court of Appeal found that plaintiffs were partially actually dependent on Levi for support, which means that they were actually dependent on him to some extent. Under the facts in this case, taking into account the increased demand upon Mr. Lewis' income, due to his official position and the changed conditions under which he has to support and maintain his family, I am convinced that said condition of partial actual dependency still exists. Heinzelman v. Board of Commissioners of Port of N. O., 149 La. 215, 88 So. 798; Cauthorn et al. v. Cypress Tank Company, 1 La. App. 100; Boudreaux et ux. v. Myles Salt Company, 11 La. App. 480, 123 So. 907; Rentz v. Phoenix Utility Company (La. App.) 141 So. 802; R. C. L. vol. 28, p. 779, § 72; Id. p. 780, § 73.

"For the reasons herein assigned, the demands of the defendant Southern Advance Bag & Paper Company, Incorporated, should be rejected, at its costs. And it is so ordered.

"E. L. Walker, Judge."

Judgment affirmed.